UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NOS. 19-CV-61503-DIMITROULEAS/STRAUSS

ROE BOAT, LLC,

    Plaintiff,

v.

N&G ENGINEERING, INC.,

    Defendant.

_____/

**ORDER ON DEFENDANT'S MOTION TO LIMIT
PLAINTIFF'S REBUTTAL EXPERT BRYAN EMOND'S TESTIMONY (DE 44)**

THIS MATTER came before me upon Defendant's Motion to Limit Plaintiff's Rebuttal Expert Bryan Edmond's Testimony ("Motion to Limit"). (DE 44). The Motion to Limit has been referred by the District Court to address "Defendant's request to limit Plaintiff's Rebuttal Expert Bryan Edmond under Rules 26 and 37 . . . pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida" ("Referral") (DE 45).[1] I have carefully reviewed the Motion to Limit, the Response (DE 48), the Reply (DE 49), and am otherwise duly advised. For the reasons discussed herein, the Motion to Limit under Rules 26 and 37 (DE 44) is **GRANTED IN PART**.

---

[1] The Referral states that the District Court will address Defendant's request to limit the rebuttal expert's testimony under Rule 702. *Id.*

I.  **BACKGROUND**[2]

Plaintiff seeks damages in this action pertaining to a fire aboard Plaintiff's motor yacht, The Roe Boat (the "Vessel"), that Plaintiff alleges was caused by Defendant's faulty repairs to the Vessel. (DE 23 at ¶¶ 6-15). Plaintiff's Amended Complaint brings three counts: (1) breach of a maritime contract, (2) breach of implied warranty of workmanlike performance, and (3) negligence. (DE 23 at 3-5). Plaintiff used the Vessel for its own use and chartered the Vessel for use by others. (DE 29 at ¶ 14; DE 31 at ¶ 14). In or about August of 2016, pursuant to an oral agreement with Plaintiff, Defendant performed repairs to the Vessel, including to the Vessel's starboard main propulsion engine exhaust turbocharger. (DE 23 at ¶¶ 6 and 18; DE 24 at 18; DE 27 at ¶ 1; DE 29 at ¶ 1). On July 26, 2017, a fire started aboard the Vessel. (DE 27 at ¶ 2; DE 29 at ¶ 2). After the fire, Plaintiff hired an expert to analyze its cause and origin. (DE 23 at ¶ 13; DE 24 at ¶ 13). Defendant then hired an expert followed by Plaintiff hiring a rebuttal expert. (DE 36; DE 39).

Defendant now challenges certain rebuttal testimony proffered by Plaintiff's rebuttal expert on the basis that the rebuttal opinions "go[ ] far beyond the topics assessed by [Defendant's expert]." (DE 44 at 9). Plaintiff contends the opinions of its rebuttal expert are properly made and not excessive in scope. (DE 48 at 2-5). I agree with Defendant for the reasons detailed below.

II.  **LEGAL STANDARDS**

Expert disclosures, including the disclosure of a rebuttal expert, must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D); *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 717 (11th Cir. 2019). An expert may be used for rebuttal if the expert offers

---

[2] Plaintiff and Defendant may describe some of the facts contained herein differently from one another. Nevertheless, those differences have not impacted the Court's rulings herein in any way.

evidence that is "intended solely to contradict or rebut evidence on the *same subject matter* identified by" the affirmative expert of another party. *Burger King Corp. v. Berry*, No. 18-20435-CIV, 2019 WL 571483, at *2 (S.D. Fla. Jan. 8, 2019) (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii)) (emphasis added).  A proposed rebuttal expert satisfies this standard as long as the information provided by the rebuttal expert repels the affirmative expert testimony of the other party. *Papasan v. Dometic Corp.*, No. 16-22482-CIV, 2019 WL 7376716, at *3 (S.D. Fla. Apr. 10, 2019). Moreover, courts construe the term "same subject matter" broadly and have discretion when determining whether a rebuttal expert in fact addresses the same subject matter as an affirmative expert. *Berry*, 2019 WL 571483, at *2 (citations omitted).  *See also Papasan*, 2019 WL 7376716, at *3 ("Courts have broad discretion in deciding what constitutes proper rebuttal evidence." (citation omitted)).  Further, it is not necessary for the training and expertise of a rebuttal expert to be identical to that of the expert he or she is rebutting.  *Lebron v. Royal Caribbean Cruises, Ltd.*, No. 16-24687-CIV, 2018 WL 3583002, at *2, *6 (S.D. Fla. July 26, 2018).

If a party fails to disclose an expert in accordance with Rule 26, the party may not use the expert unless the Rule 26 violation is harmless or the party demonstrates substantial justification for the violation.  *Guevara*, 920 F.3d at 718 (citing Fed. R. Civ. P. 37(c)(1); *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir. 2008)).  *See also* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").  However, other appropriate sanctions may be imposed, in addition to, or in lieu of, exclusion of the expert, upon motion and an opportunity to be heard.  Fed. R. Civ. P. 37(c)(1)(C).  Rule 37 applies when an expert who should have been designated as an affirmative expert is instead designated as a

rebuttal expert (after the affirmative expert deadline). *See Kendall Lakes Towers Condo. Ass'n, Inc. v. Pac. Ins. Co.*, No. 10-24310-CIV, 2011 WL 6372198, at *3 (S.D. Fla. Dec. 20, 2011). If the non-disclosing party raises substantial justification to attempt to excuse a Rule 26 violation, that party has the burden of establishing substantial justification. *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009).

### III.  DISCUSSION

Here, Plaintiff served the report of its liability expert, Mr. Michael Hill, to which Defendant's liability expert, Mr. John Toth, responded by largely rebutting Mr. Hill's cause and origin opinions. (DE 44 at 1-3). Mr. Hill's report opined, in relevant part, that: (1) that the ignition point for the fire was the overflow hose due to "a hot surface ignition from the turbo"; and (2) that ceiling insulation was another potential ignition source. (DE 44-1 at 33; DE 44 at 8-9). Mr. Toth rebutted Mr. Hill's opinions, in part, by stating that: (1) the subject overflow hose did not exhibit characteristics of hot surface contact; and (2) "heat load into the exhaust resulted in failure of the turbocharger oil seals, and initiated fire inside the exhaust riser." (DE 44-3 at 18; DE 48 at 3-4).

Plaintiff then served a report by engineer Bryan Emond to rebut Mr. Toth. DE 44 at ¶ 8. Defendant now seeks to exclude the following opinions of Plaintiff's rebuttal expert, Mr. Emond, addressing: (1) temperature calculations; and (2) consideration of ceiling materials on the grounds that these opinions exceed the scope of rebuttal allowed under Federal Rule of Civil Procedure 26(a)(2)(C). Specifically, Defendant seeks to exclude the following opinions of Mr. Emond:

1. Given the large difference between the exhaust temperature and the expected melting and ignition temperatures for plastic, rigorous calculations to determine whether a particular product might ignite are not necessary ("Opinion One"); and

2. Consideration of the ceiling material and its proximity to the exhaust riser is not necessary; the exhaust riser is aft of the identified origin area ("Opinion Two").

4

(DE 44 at 5-10). Plaintiff argues that the objected-to rebuttal opinions address the same subject matter as addressed by Defendant's expert, Mr. Toth. (DE 48 at 3). I address each opinion in turn.

As to Opinion One, Defendant explains that its liability expert, John Toth, did not comment as to the necessity of temperature calculations nor was Mr. Toth critical regarding the absence of such calculation in Mr. Hill's report. (DE 44 at 9). Plaintiff, however, asserts that Opinion One addresses the same subject matter as Mr. Toth because Opinion One responds specifically to Mr. Toth's opinions #2 and #4 below:

> 2. N&G Engineering did not inadvertently route the coolant overflow hose over the turbocharger making the hose the fuel for hot surface ignition. The coolant hose routing is consistent with the exemplar vessel that is not equipped with heat shield bands and shows no signs of heat damage or witnessing from the exposed turbocharger outlet connection. The Exemplar vessel coolant overflow hose retains engine paint overspray on the hose jacket surface with no witness of the paint heat damaged or burned.
>
> 4. The fire was *not a result of hot surface ignition* as described in the SEA report, where the hot surface identified was covered by the heat shield band that became consumed in the fire, with remnants of the band clearly visible in the fire debris. The *overflow coolant hose*, with routing over the turbo charger, has areas of the metal hose reinforcement melted/burned off, with the adjacent/contacting rubber substrate remaining, *inconsistent with a hot surface contact*.

(DE 48 at 3-4; DE 44-3 at 17-18) (emphasis added). Plaintiff explains that Mr. Toth's opinion that the overflow coolant hose could not have ignited on the subject vessel based on similar placement of such hose on an exemplar vessel is rebutted by Mr. Emond addressing the physical characteristics of the hose materials that make ignition of the hose probable. (DE 48 at 3-4).

Defendant counters that Plaintiff merely attempts to characterize Mr. Emond's Opinion One as rebuttal to Mr. Toth's opinion that the overflow hose was not the ignition source for the subject fire when it is actually a supplement to Mr. Hill's report and a part of Plaintiff's case-in-chief. (DE 44 at 8-9; DE 49 at 5). Defendant explains that, because Mr. Hill's report did not

5

include temperature calculations to address testing of his hypothesis that escaping exhaust ignited the overflow hose, Mr. Hill's opinion is subject to a *Daubert* challenge. (DE 44 at 8-9; DE 49 at 5; DE 44-1). As such, Defendant argues that Mr. Emond's opinion finding temperature calculations unnecessary was made to supplement Mr. Hill's report. (DE 49 at 5) (reasoning that, because Mr. Hill "[did not] articulate that he conducted ignition calculation to test his hypothesis that the fire was cause[d] from exhaust gas coming into contact with an underflow [sic] hose," Mr. Emond's opinion was a supplement to Mr. Hill's report).

Defendant has the better argument. Mr. Emond's Opinion One is clearly meant to address a potential critique of, or deficiency in, Mr. Hill's analysis. Yet, Mr. Toth (whose opinions Mr. Emond is allegedly rebutting) do not level this critique. Indeed, nowhere in the above-cited opinions by Mr. Toth is there any discussion of temperature calculations in order to anchor Opinion One as rebuttal. Further, the fact that Mr. Hill's report failed to address testing of his hypothesis – that a coolant hose ignited from exhaust fumes – reasonably explains how Mr. Emond's opinion that temperature calculations are unnecessary goes directly to Plaintiff's case-in-chief. Therefore, I conclude that Opinion One goes beyond rebuttal and seeks to supplement the report of Plaintiff's affirmative expert, Mr. Hill. "[R]ebuttal evidence may be used to challenge the evidence or theory of an opponent—and not to establish a case-in-chief." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) (citing *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 685 (5th Cir. 1991)). Thus, I find that Defendant's Motion to Limit should be granted relative to Opinion One and that Opinion One should be stricken from Mr. Emond's report.

With respect to Opinion Two, Defendant argues that "Mr. Toth [did] not comment at all as to the ceiling insulation being an ignition source or criticize Mr. Hill's failure to rule out that [sic]

6

the ceiling insulation as the ignition point." (DE 44 at 8-9; DE 44-1 at 33). Plaintiff argues that Opinion Two is rebuttal opinion because it responds to Mr. Toth's opinion #7:

> 7. Both QSM11-M starboard and port engines have similar failure characteristics and indicate that they were being run overloaded, where the heat load into the exhaust resulted in failure of the turbocharger oil seals, and *initiated fire inside the exhaust riser* at the turbocharger exit of the starboard engine first. This fire was accelerated by the available fuel at the source, found pathway out at the turbocharger to exhaust riser connection, consumed the heat shield band covering the connection, and fire damaged the surrounding area.

(DE 48 at 3-4) (emphasis added). Specifically, Plaintiff contends that Mr. Emond's Opinion Two – that consideration of ceiling material in the area of the exhaust riser is unnecessary – contradicts Mr. Toth's opinion regarding the origin of the fire having "initiated . . . inside the exhaust riser." *Id.* at 4. Plaintiff further explains that, "in Mr. Emond's report, the origin area of the fire *as indicated by Mr. Toth* is clearly forward of the exhaust riser . . . and the insulation on the exhaust riser was in reasonably good condition after the fire, indicating that it was not subject to extraordinarily high temperatures." *Id.* (emphasis added). Thus, Plaintiff raises a potential inconsistency within Mr. Toth's report. Plaintiff goes further, however, to argue that because "the exhaust riser is aft of the identified origin area," consideration of the ceiling material in the vicinity of the exhaust riser is unnecessary as Mr. Emond opines. *Id.* Plaintiff thus claims that Opinion Two directly repels Mr. Toth's opinion regarding the fire's initiation inside the exhaust riser.

I agree with Defendant that "Plaintiff's attempts [to] relate [Opinion Two] to Mr. Toth's report appears to be a bit tortured." As Defendant correctly observes, Mr. Toth's report does not address ceiling materials. Thus, Mr. Emond's assertion that it is not necessary to consider ceiling materials does not rebut anything Mr. Toth concluded. Nor does it identify or advance the alleged inconsistencies within Mr. Toth's report discussed in Plaintiff's response. Furthermore, Mr. Emond's insertion of a discussion about ceiling materials should not be allowed to bolster Mr.

7

Hill's potential failure to rule out such ceiling material as another possible ignition source. As with Opinion One, Defendant argues that Opinion Two backfills Mr. Hill's opinion that is subject to a *Daubert* challenge because "Mr. Hill fail[ed] to explain how he excluded other potential ignition source[s] (ceiling insulation)." (DE 44 at 9). Defendant contends this is significant because, if ceiling insulation was the ignition point, then the overflow hose that Mr. Hill claims ignited from hot surface contact could not have caused the fire. *Id.* at n.1. Thus, Opinion Two, like Opinion One, inappropriately bolsters Plaintiff's affirmative expert rather than rebuts assertions made by Defendant's expert, Mr. Toth. As such, Defendant's motion is due to be granted relative to Opinion Two, and that opinion should be stricken from Mr. Emond's report.

### IV. CONCLUSION

For the reasons discussed above, it is **ORDERED** and **ADJUDGED** that:

1. The Motion to Limit (DE 44) is **GRANTED** to the extent that it seeks to limit certain opinions of Plaintiff's rebuttal expert, Mr. Bryan Emond.

2. The following opinions shall be **STRICKEN** from Mr. Emond's report:

    a. Given the large difference between the exhaust temperature and the expected melting and ignition temperatures for plastic, rigorous calculations to determine whether a particular product might ignite are not necessary; and

    b. Consideration of the ceiling material and its proximity to the exhaust riser is not necessary; the exhaust riser is aft of the identified origin area.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 18th day of December 2020.

Jared M. Strauss
United States Magistrate Judge

Copies furnished to counsel via CM/ECF